United States District Court
Eastern District of Louisiana

| | |
|---|---|
| Gregg Spaulding Hunter, M.D. | Civil Action No. 15-1833 |
| *Plaintiff,* | Section H |
| | District Judge Jane Triche Milazzo |
| v. | |
| | Division 2 |
| Louisiana State Board of Medical Examiners, et al. | Magistrate Judge Joseph C. Wilkinson |
| *Defendant* | |

# Defendants' Memorandum in Support of Motion for Summary Judgment

May it please the Court:

The plaintiff, Gregg Spaulding Hunter, M.D., has brought a civil action against the Louisiana State Board of Medical Examiners and its individual members under 42 U.S.C. § 1983. His complaint arises from the Board's decision to suspend his license to practice medicine until he undergoes a medical examination ordered by the Board. In prior proceedings, this Court dismissed all of Dr. Hunter's claims against the Board and all of his claims against the individual defendants in their individual capacities.[1] Thus, Dr. Hunter's only remaining claim is for injunctive relief against the individual defendants in their official capacities. This claim is based on his allegation that he was deprived of his property interest in his medical license without due process.

The defendants now move for summary judgment on Dr. Hunter's remaining claim. The undisputed facts show that Dr. Hunter, in fact, received more than adequate due process. When the Board's latest investigation into Dr. Hunter's practice began, he

[1] *See* Rec. Doc. 27, Order and Reasons (June 20, 2016).

was still on probation resulting from a prior investigation, and he was still subject to a consent order specifying the terms of his probation. Among those terms was his agreement to undergo any examination that the Board, in its sole discretion, may deem necessary or appropriate. He further agreed that any failure by him to comply with the terms of his probation would be grounds for summary suspension of his license. On receiving a complaint of inappropriate conduct by Dr. Hunter from a female patient, the Board's investigators asked him to voluntarily submit to an examination. When he failed to do so, the Board ordered him to undergo the examination. When he failed to comply with the Board's order, he was summarily suspended.

Within days after the summary suspension, Dr. Hunter was served with an administrative complaint specifying the charges against him, which arose from his failure to undergo the examination ordered by the Board. He was given timely notice of hearing. He in fact appeared at the hearing and was represented by counsel. He was given the opportunity to offer evidence and to cross-examine all the witnesses against him—including the patient whose complaint triggered the investigation into his medical practice. After the hearing concluded, the Board issued a decision continuing the suspension until he complies with the Board's order to undergo the examination. After the Board rendered its decision, he had the right to seek rehearing and the right to judicial review in state court. Thus, although Dr. Hunter was deprived of property (his medical license), the deprivation did not occur without due process.

Because there can be no genuine dispute about the process afforded to Dr. Hunter, defendants are entitled to summary judgment dismissing his claim for violation of procedural due process.

## Factual Background

**1.     The Board and its functions.**

The Board is an agency of the State of Louisiana, created by the Louisiana Legislature within the Department of Health and Hospitals. La. R.S. 37:1263(A). Its purpose is to ensure that "the public shall be properly protected against unprofessional, improper, unauthorized, and unqualified practice of medicine and from unprofessional conduct of persons licensed to practice medicine …." La. R.S. 37:1261. To that end, the Board has the sole authority to "examine all applicants for the practice of medicine; issue licenses or permits to those possessing the necessary qualifications therefor; and take appropriate administrative actions to regulate the practice of medicine in the state of Louisiana." La. R.S. 37:1270(A)(1). In addition, the Board may refuse to issue a license or permit, may suspend or revoke any license or permit, or may impose probationary or other restrictions on any license or permit which it has issued for a number of causes articulated in the Medical Practice Act and the Board's rules and regulations governing the practice of medicine. *See* La. R.S. 37:1285(A) (listing grounds for revocation, suspension, or other actions against a licensee).

To fulfill its statutory mandate, the Board has the authority to "employ inspectors, special agents, and investigators; issue subpoenas to require attendance and testimony and the production of documents and things for the purpose of enforcing the laws relative to the practice of medicine and securing evidence of violations thereof…." La. R.S. 37:1270(B)(4). Under this authority, the Board employs an investigating officer and medical consultant whose duties involve investigating complaints concerning physicians' medical practice and making recommendations to the Board about the course to take in connection with those complaints.

As a result of an investigation, the investigating officer may file an administrative complaint against the respondent physician alleging violation of the Medical Practice Act. If she does, any proceedings before the Board to adjudicate the complaint are conducted under the Louisiana Administrative Procedure Act, La. R.S. 49:950 *et seq*. If the administrative proceedings end with an adjudication against the respondent physician, the physician has the right to judicial review. *See* La. R.S. 49:964.

**2.    The Board's investigative and administrative proceedings against Dr. Hunter.**

Dr. Hunter's allegations concern the Board's disciplinary actions against him in 2014. To put these most recent actions in context, some history is necessary.

### A.  *Dr. Hunter's history raised questions about his observing professional boundaries.*

Several years ago, an investigation by the Board indicated that Dr. Hunter, a physician and psychiatrist licensed by the Board, was chemically dependent on controlled or mood-altering substances. His condition was first diagnosed in 1999, after which he underwent in-patient examination and treatment. He then entered into a monitoring agreement with the Physicians' Health Foundation of Louisiana, Inc.'s Physician Health Program ("PHP"), which he successfully completed in 2005.[2]

In the fall of 2008, Dr. Hunter tested positive for mood-altering substances and was asked to undergo in-patient examination. When he refused to do so, the Board summarily suspended his license.[3] He then submitted to an examination and in-patient

---

[2] Ex. C, Consent Order for Reinstatement of License on Probation 1 (Dec. 14, 2009).

[3] *Id*.

4

treatment at Pine Grove Behavioral and Health Services in Hattiesburg, Mississippi.[4] During his stay at Pine Grove, pornographic materials were found in his car. As a result, his treatment included participation in a male group therapy concerning sexual matters.[5]

While Dr. Hunter was undergoing treatment at Pine Grove, the Board received copies of previously sealed court records from a case involving Dr. Hunter. The plaintiff in the case alleged that she was a patient of Dr. Hunter, and that in 2003 and 2004, Dr. Hunter had a sexual relationship with her.[6]

Dr. Hunter successfully completed his course of in-patient treatment at Pine Grove. He was discharged with the recommendation for ongoing therapy and monitoring.[7] On October 29, 2009. Dr. Hunter signed a PHP Monitoring Contract with the Physicians' Health Foundation. The contract included a special provision requiring him to complete a treatment process approved by the PHP and focusing on professional boundaries.[8] Dr. Hunter successfully completed this treatment program.[9]

On December 8, 2009, Dr. Hunter signed a consent order with the Board for reinstatement of his license, subject to probation of five years.[10] Among the conditions of his probation was his consent to "the imposition of any additional terms, conditions, or restrictions" placed on his license to practice medicine, including "additional

---

[4] *Id.* at 1; Ex. F at 2.

[5] Sealed Ex. A.1, Admin. Complaint at 2 ¶ 5; Ex. E, Formal Hearing Tr. 28 (July 21, 2014); Ex. F at 3.

[6] Sealed Ex. A.1, Admin. Complaint at 2 ¶ 4; Ex. E at 28–29; Ex. F at 3.

[7] Ex. C at 1; Ex. F at 2.

[8] Sealed Ex. A.12, PHP Monitoring Contract 5 (Oct. 29, 2009); Ex. E at 27.

[9] Ex. E at 100.

[10] Ex. C at 2.

treatment, reports, and evaluations … which the Board in its sole discretion may deem necessary or appropriate."[11] He further agreed that any failure to comply with any terms of his probation would justify "the immediate suspension of his license to practice medicine in this state …," and that proof of any such violation would be grounds to revoke his license.[12] The consent order was accepted by the Board and went into effect on December 14, 2009.[13]

### B.  In 2014, the Board received a complaint of boundary violations by Dr. Hunter.

In March 2014, the Board received a complaint about Dr. Hunter from a female patient identified as A.B.[14] On the complaint form, she checked off boxes for "Rude or discourteous behavior," "Poor communication skills or poor 'bedside manner,'" and "Sexual misconduct."[15] In a written narrative attached to the complaint form, she complained that, during four office visits in February and March 2014, Dr. Hunter asked her sexually inappropriate questions and made sexually inappropriate comments about her appearance and her relationship with her fiancé.[16]

A.B.'s complaint was referred to Lesley R. Rye, R.N., an investigator for the Board and Dr. Hunter's probation compliance officer. Ms. Rye interviewed A.B. by telephone and found her to be credible. A.B.'s verbal description of Dr. Hunter's conduct was

---

[11] *Id.* at 4, ¶ 9.

[12] *Id.* at 5 ¶ 16; *id.* at 6.

[13] *Id.* at 6.

[14] Ex. E at 19–20; Ex. F at 2.

[15] Sealed Ex. A.6; Ex. F, Decision and Order 2 (Aug. 18, 2014).

[16] Sealed Ex. A.1 at 2–3 ¶ 7; Sealed Ex. A.6 (attachment to complaint form, quoting Dr. Hunter's comments).

consistent with her written complaint, and she had no civil lawsuit or other ulterior motive to file a false complaint with the Board.[17]

### C. To aid the investigation into the complaint, Dr. Hunter was asked to undergo a voluntary examination.

After Ms. Rye interviewed A.B., she consulted with the Board's Director of Investigations, Dr. Cecilia Mouton, on an appropriate response. They considered Dr. Hunter's history at Pine Grove and the PHP recommendation that he receive treatment focusing on professional boundaries before being allowed to return to practice. They also considered the prior civil lawsuit against Dr. Hunter, in which another patient alleged sexual misconduct. Considering Dr. Hunter's history, A.B.'s apparent credibility, and the vulnerability of psychiatric patients, Ms. Rye and Dr. Mouton decided to recommend that Dr. Hunter voluntarily undergo an examination by the Behavioral Medicine Institute ("BMI") in Atlanta, Georgia.[18]

On March 28, 2014, Ms. Rye wrote a letter to Dr. Hunter advising him of A.B.'s complaint.[19] Ms. Rye told Dr. Hunter that the Board's investigation found the complaint to be credible, and "with your history with the Board and the vulnerable nature of psychiatric patients, it is our obligation to take this complaint seriously."[20] To aid the investigation into A.B.'s complaint, it was recommended that Dr. Hunter submit to a

---

[17] Ex. E at 19–24.

[18] Ex. E at 45–46, 50–51, and 66.

[19] Sealed Ex. A.5.

[20] *Id.*

voluntary examination at BMI. The letter warned that, if Dr. Hunter did not undergo the examination voluntarily, "it may be necessary to pursue administrative charges."[21]

In April 2014, Dr. Hunter responded with a four-page letter giving his side of the story and requesting a meeting with Ms. Rye and Dr. Mouton, "as I appeal your recommendation for an evaluation."[22] Ms. Rye responded, telling Dr. Hunter that, according to Dr. Mouton's instructions, a meeting would not be scheduled and that he was expected to complete the examination as directed.[23] Dr. Hunter replied that he was uncomfortable going to BMI, but said that he would be willing to undergo examination at Acumen Assessments in Lawrence, Kansas. Ms. Rye said that examination by the Acumen facility would be acceptable.[24] Dr. Hunter said that he would contact Acumen and make arrangements for the examination.[25]

### D.  When Dr. Hunter failed to undergo the examination voluntarily, the Board ordered him to undergo the examination.

Several days passed without Ms. Rye's hearing from Dr. Hunter. So she contacted Acumen and learned that no examination of Dr. Hunter had been scheduled.[26] The matter was brought to the attention of the Board, and on May 19, 2014, the Board issued an order that Dr. Hunter undergo the examination.[27]

---

[21] *Id.*

[22] Sealed Ex. A.7; *id.* at 4.

[23] Sealed Ex. A.8.

[24] Ex. F at 3; Ex. E at 34.

[25] Ex. E at 34–35.

[26] Ex. E at 35.

[27] Ex. E at 36–37 and 67–68; Sealed Ex. A.9; Sealed Ex. A.10.

In response to the Board's order, Dr. Hunter wrote a letter saying that he could not afford to pay for the examination.[28] Again, the matter was brought to the Board's attention, and on May 30, 2014, the Board issued an order summarily suspending Dr. Hunter's license.[29]

### E.  After an evidentiary hearing, the Board found Dr. Hunter guilty of disobeying its order compelling the examination.

On June 9, 2014, an administrative complaint against Dr. Hunter was filed with the Board. The complaint charged him with violating La. R.S. 37:1285(A)(13) and (26) for failing to submit to the examination directed by the Board.[30] On July 21, 2014, an administrative hearing was held before the Board. Dr. Hunter was present and was represented by counsel.[31] His defense was that he was never given a face-to-face meeting with anyone at the Board to give his side of the story, that the Board's investigation was inadequate to support the action taken against him, and that he did not have the funds to pay for an examination.[32] The Board found him guilty as charged. The Board concluded that the complaint against Dr. Hunter was a credible basis for the investigation, and that Dr. Hunter, in responding to the complaint, "does not deny the

---

[28] Ex. E at 37; Sealed Ex. A.11.

[29] Ex. D, Notice of Summary Suspension of Medical License (May 30, 2014); Ex. E at 37–38; Sealed Ex. A.3.

[30] Sealed Ex. A.1 at 4 ¶ 13; Ex. F at 3. Revised Statute 37:1285(A)(13) authorizes the Board to suspend or revoke a license for "[u]nprofessional conduct, including but not limited to … failing to cooperate with the board …." Revised Statute 37:1285(A)(26) authorizes the Board to suspend or revoke a license for the licensee's "[r]efusing to submit to the examinations and inquiry of an examining committee of physicians appointed or designated by the board to inquire into the physician's physical and mental fitness and ability to practice medicine with reasonable skill and safety to patients."

[31] Ex. E at 3 and 8 (noting presence of Dr. Hunter with counsel); Ex. F at 1.

[32] Ex. F at 3.

conduct so much as he justifies it [as] a part of his technique."[33] The Board also noted that "[o]ther conduct of a sexual nature forms part of [Dr. Hunter's] record while being evaluated in 2009."[34]

Based on its findings, the Board found that Dr. Hunter violated La. R.S. 37:1285(A)(13) and (26) by failing to undergo the examination ordered by the Board. Recognizing that "a current evaluation is an essential part of the Board's investigation under the circumstances of this case," the Board suspended Dr. Hunter's license "until such time as he has complied with the Board's order for an evaluation."[35]

### F.   After the Board rendered its decision, Dr. Hunter failed to pursue remedies available under state law.

The Board issued its decision on August 18, 2014. Under the Louisiana Administrative Procedure Act, Dr. Hunter had 30 days to seek judicial review of the Board's decision by filing a petition in Civil District Court, Orleans Parish. *See* La. R.S. 49:964(B). If he was dissatisfied with the district court's final judgment, he would have had the right to appeal that judgment to the Louisiana Court of Appeal, Fourth Circuit. *See* La. R.S. 49:965.

But Dr. Hunter failed to seek judicial review in Louisiana state court. Instead, he began this civil action in federal court. In his original complaint, he sued only the Board. In an amended complaint, he added claims against the individual Board members and Dr. Mouton.

---

[33] *Id.*

[34] *Id.*

[35] Ex. F at 3–4.

### G.   Prior proceedings resulted in dismissal of most of Dr. Hunter's federal claims.

The defendants moved to dismiss Dr. Hunter's complaint under Fed. R. Civ. P. 12(b)(1) and (6). This Court granted the motion in part, dismissing all claims against the Board itself and all claims for damages against the individual defendants in their individual capacities.[36] Thus, the only remaining claim is for injunctive relief against the individual defendants in their official capacities. The basis for this claim is Dr. Hunter's allegation that he was deprived of his property interest in his medical license without procedural due process. In allowing this claim to survive Rule 12(b)(6) dismissal, this Court limited its review to the complaint and any documents attached to the motion to dismiss and referenced in the complaint.[37] Employing this limited review, the Court determined that Dr. Hunter's complaint alleges deprivation of procedural due process.[38]

The remaining defendants now move for summary judgment. Evidence beyond the complaint itself shows that there is no genuine issue of material fact concerning the due process afforded Dr. Hunter. Every action taken by the Board complied with due process, from the order compelling the examination through the administrative evidentiary hearing. Because there are no disputes of material fact concerning these actions, the defendants are entitled to judgment as a matter of law dismissing Dr. Hunter's claim for violation of procedural due process.

---

[36] *See* Rec. Doc. 27, Order and Reasons (June 20, 2016).

[37] Rec. Doc. 27 at 3 ("The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

[38] Rec. Doc. 27 at 9–10.

## Law and Argument

### 1.    This motion is authorized under Fed. R. Civ. P. 56.

Under Fed. R. Civ. P. 56(a), a party may move for summary judgment, identifying each claim or part of a claim on which summary judgment is sought. The Court shall grant the motion if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.

A party asserting that a fact cannot be genuinely disputed must support the assertion by citing particular parts or materials in the record, including depositions, documents, affidavits or declarations, admissions, or other materials. Fed. R. Civ. P. 56(c)(1)(A). It follows that the Court can and should consider these materials in ruling on the motion.

### 2.    The Board acted lawfully in ordering Dr. Hunter to undergo an examination at his expense.

Courts across the country recognize that a state's medical licensing board does not violate a medical professional's right to due process by ordering the professional to submit to a physical or mental examination. *See*, *e.g.*, *Lee v. Bd. of Registered Nursing*, 209 Cal. App. 4th 793, 798, 147 Cal. Rptr. 3d 269, 273 (2012) (board's order for examination did not deprive a nurse of any state or federal due process interest); *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565–67 (Minn. App. 1994) (psychiatrist's right to due process not infringed by order compelling examination).

In Louisiana, every physician accepting a license from the Board to practice medicine is "deemed to have given his consent to submit to physical or mental

examinations when so directed by the board ...." La. R.S. 37:1278(A). The Board may order a physician to submit to such an examination when it "has reasonable cause to believe that such physician's fitness and ability is affected by mental illness or deficiency, or physical illness ...." La. R.S. 37:1270(B)(5). A physician's failure to undergo an examination ordered by the Board is grounds for disciplinary action against the physician, including revocation of the physician's license to practice medicine. *See* La. R.S. 37:1285(A)(26). When the Board orders a physician to undergo an examination, Louisiana law requires the physician to pay the cost of the examination. *See* La. R.S. 37:1281(A)(4) (physician must pay the cost of the examination directly to the entity administering the examination).

In addition to its statutory authority, the Board had Dr. Hunter's explicit consent to submit to any examination ordered by the Board. In the December 14, 2009 consent order, one of the conditions of Dr. Hunter's five-year probation was his consent to any "additional treatment, reports and evaluations ... which the Board in its sole discretion may deem necessary or appropriate."[39] Dr. Hunter's license was still under probation on May 19, 2014, when the Board ordered him to undergo the examination.[40]

The Board has reasonable grounds to believe that Dr. Hunter's mental condition presents a danger to vulnerable psychiatric patients. The Board has a complaint from an apparently credible female patient accusing him of making offensive sexual comments in psychotherapy sessions. The Board has knowledge of a prior civil lawsuit by another female patient alleging that he had a sexual relationship with her. His monitoring contract with PHP included a special provision requiring him to "complete a treatment

---

[39] Ex. C at 4 ¶ 9.

[40] *See* Sealed Ex. A.10 (Notice of Order for Evaluation of Medical Professionals).

process focusing on professional boundaries" before being allowed to return to practice.[41] Before that, the medical professionals at Pine Grove required him to participate in group therapy for sexual issues.[42] All of this information provided reasonable grounds for the Board to order an examination of Dr. Hunter as part of its investigation into A.B.'s complaint.

Dr. Hunter contends that, while he is willing to undergo the examination, he cannot afford to pay for it. But in requiring Dr. Hunter to pay for the examination, the Board was simply following Louisiana statutory law. Revised Statute 37:1281(A)(4) requires that "[t]he cost and expense of any examination or test required by the board as a prerequisite to the issuance, renewal, or restatement [sic] of any license ... shall be paid by the physician ... directly to the entity, association, or organization administering such examination or test." The Board has no statutory authority to advance the cost of an examination. Rather, Louisiana law requires Dr. Hunter to bear this cost.

**3.      The summary suspension of Dr. Hunter's license was lawful.**

When Dr. Hunter failed to comply with the Board's order to submit to an examination, the Board issued an order summarily suspending his license.[43] This order was authorized by Louisiana law and is constitutionally permissible.

The Supreme Court has "traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979). Thus, a state is entitled to impose an interim

---

[41] Sealed Ex. A.12 at 5.

[42] Ex. E at 28.

[43] Sealed Ex. A.3; Ex. D.

suspension, pending a prompt hearing that would definitely determine the issues, whenever it has satisfactorily established probable cause to believe that grounds exist for a suspension. *Barry v. Barchi*, 443 U.S. 55, 64 (1979). Both the Louisiana Administrative Procedure Act and the Board's own rules authorize summary suspension of a license on a finding that public health, safety, or welfare requires emergency action. La. R.S. 49:961(C); La. Admin. Code 46:XLV.9931(A) (Ex. G). Here, the Board had reason to believe that continuation of his psychiatric practice was placing his female patients at risk. This risk, coupled with Dr. Hunter's failure to undergo the Board-ordered examination, justified emergency action.

In this case, the December 14, 2009 consent order gave the Board additional authority to order a summary suspension. In the consent order, Dr. Hunter agreed that the Board's receipt of "a reliable report that indicates his failure to comply with the requirements set forth by this Order shall, without the need for formal hearing, … constitute his irrevocable consent to the immediate suspension of his license to practice medicine in this state by the Board …."[44] Here, the Board had evidence of Dr. Hunter's failure to comply with the consent order by failing to undergo an examination ordered by the Board. Thus, the consent order gave the Board an additional basis for summary suspension of Dr. Hunter's license.

The Board fulfilled its legal responsibility to give Dr. Hunter a prompt post-suspension hearing. The administrative complaint was filed on June 9, 2014, ten days after the summary suspension.[45] Notice of the hearing was issued nine days later, on

---

[44] Ex. C at 5 ¶ 16.

[45] *See* Sealed Ex. A.1.

June 18, and the hearing itself was held on July 21, 2014.[46] Thus, the summary suspension of Dr. Hunter's license complied with due process.

### 4. The subsequent evidentiary hearing and post-hearing remedies available to Dr. Hunter satisfied procedural due process.

In his amended complaint, Dr. Hunter alleges that the Board "failed to provide him with a hearing to challenge the truth and veracity of his accuser ...."[47] This allegation is misleading. In fact, Dr. Hunter was given a full evidentiary hearing. The patient who complained of his conduct, A.B., testified at the hearing and was subject to cross-examination by Dr. Hunter's counsel.

Before turning to the state-law procedures available to Dr. Hunter, defendants first wish to explain why the availability of those procedures is important. There are three kinds of § 1983 claims that may be brought under the Fourteenth Amendment's Due Process Clause. The first is for deprivation of one of the protections specified in the Bill of Rights, e.g. freedom of speech, freedom from unreasonable searches and seizures. The second is for deprivation of substantive due process, i.e. governmental actions that are wrongful and arbitrary regardless of the procedures used to implement them. As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken, and the plaintiff may invoke § 1983 regardless of the availability of any state-law remedies. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

The third type of § 1983 claim is for violation of procedural due process. For this type of claim, unlike the first two, the existence of state remedies is relevant in a special

---

[46] *See* Sealed Ex. A.2 (notice of hearing); *see also* Ex. E, Formal Hearing Tr. (July 21, 2014).

[47] Rec. Doc. 16 at 3 ¶ 8.

sense. In a procedural-due-process claim, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. For this type of claim, the constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless the state fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, the Court must ask what process the state provided and whether it was constitutionally adequate. This inquiry examines the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by state law. *Id.* at 125–26.

Dr. Hunter alleges the third type of § 1983 claim. His license to practice medicine is property, which he cannot be deprived of without procedural due process. *Lowe v. Scott*, 959 F.2d 323, 334–35 (1st Cir. 1992). Thus, to determine whether he has a claim, the Court must examine the process provided by the state and determine whether it was constitutionally adequate. As shown below, the action against Dr. Hunter's license complied with due process.

### A.  *The evidentiary hearing satisfied due process.*

The fundamental requisite of procedural due process is the opportunity to be heard. The hearing must be at a meaningful time and in a meaningful manner. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). It must include the following elements:

1. Timely and adequate notice detailing the reasons for the proposed deprivation.

2. An effective opportunity to defend by confronting any adverse witnesses and by presenting arguments and evidence.

17

3. The right to retained counsel.

4. An impartial decision maker.

5. A decision resting solely on the legal rules and evidence adduced at the hearing.

6. A statement of reasons for the decision and the evidence relied on.

*Goldberg*, 397 U.S. at 267–71; *Mathews v. Eldridge*, 424 U.S. 319, 325 n. 4 (1976). In Dr. Hunter's case, all of these elements are satisfied.

**(1)    Timely and adequate notice.** This requirement is satisfied by La. R.S. 49:955 of the Louisiana Administrative Procedure Act and by La. Admin. Code 46:XLV.9905(B) of the Board's procedural rules. Section 49:955(A) requires all parties to an adjudication to be "afforded an opportunity for hearing after reasonable notice." The notice must include (1) a statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and rules involved; and (4) a short and plain statement of the matters asserted.  Similarly, the Board's procedural rules require the notice to include "a statement of the legal authority and jurisdiction under which the hearing is to be held," and to be accompanied by a certified copy of the administrative complaint. La. Admin. Code 46:XLV.9905(B). The administrative complaint, in turn, must set forth "a concise statement of the material facts and matters alleged ... including the facts giving rise to the board's jurisdiction over the respondent, the facts constituting legal cause under law for administrative action against the respondent, and the statutory or regulatory provisions alleged to have been violated by respondent." La. Admin. Code 46:XLV.9903(B).

The administrative proceedings here complied with these constitutional, statutory, and regulatory requirements. Dr. Hunter was served with the administrative complaint, which specified the charges against him and the factual bases for the charges.[48] Nine days later, he was served with a notice of hearing, informing him when and where the hearing would be held.[49] The hearing itself occurred on July 21, 2014, 42 days after the administrative complaint was filed and 33 days after the notice of hearing.

**(2) Opportunity to defend.** Revised Statute 49:955(C) requires that a party to an administrative adjudication be given the opportunity "to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross examination as may be required for a full and true disclosure of the facts." The same requirements are found in the Board's procedural rules. *See* La. Admin. Code 46:XLV.9921(B). To further enable the respondent's defense, § 46:XLV.9917(A) requires the Board to issue subpoenas at the respondent's request, "requiring the attendance and giving of testimony by witnesses and the production of books, papers, and other documentary evidence at an adjudication hearing."

The transcript of the hearing before the Board, attached as Exhibit E, amply demonstrates fulfillment of these requirements. Dr. Hunter was present and was represented by counsel.[50] Dr. Hunter's counsel gave an opening statement, cross-examined the witnesses against Dr. Hunter, and gave a closing argument.[51] Dr. Hunter himself testified in his own defense.[52]

---

[48] *See* Sealed Ex. A.1.

[49] *See* Sealed Ex. A.2.

[50] Ex E at 3 and 8.

[51] *See* Ex. E at 13–16 (opening statement); *id.* at 40–67 (cross-examining Lesley Rye), *id.* at 126 (cross-examining the complainant, A.B.), *id.* at 130–32 (closing argument).

In his amended complaint, Dr. Hunter alleges that he had no opportunity to "confront" or "to challenge the truth and veracity" of the patient whose complaint led to the Board's investigation.[53] This allegation is simply not true. The patient who complained, A.B., testified at the hearing, and Dr. Hunter's counsel had the opportunity to cross-examine her.[54] In fact, the very reason she was put on the witness stand was to establish her "truth[fulness] and veracity."[55] The hearing transcript shows no attempt to restrict A.B.'s cross-examination by Dr. Hunter's counsel.[56]

**(3) Right to retained counsel.** The Board's procedural rules allow a respondent physician to be "represented in an adjudication proceeding before the board by an attorney at law duly admitted to practice in any state." La. Admin. Code 46:XLV.9907(B). In this adjudication, Dr. Hunter was represented by the same attorney representing him in this civil action.[57]

**(4) An impartial decision maker.** The Board's members are presumed to be impartial. They "are assumed to be [persons] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." *Withrow v. Larkin*, 421 U.S. 35, 55 (1975). The Louisiana Administrative Procedure Act, applicable to proceedings before the Board, includes provisions designed to foster

---

[52] Ex. E at 72–118.

[53] Rec. Doc. 16, 1st Amended Complaint at 2–3 ¶¶ 6 and 8.

[54] *See* Ex. E at 118–26 (A.B.'s testimony); *id.* at 126 (cross-examination by Dr. Hunter's counsel). The patient's name has been redacted from the transcript to protect her privacy.

[55] *See* Ex. E at 125 (Mr. Wall arguing that the relevance of A.B.'s testimony "is the argument that [Dr. Hunter] has made that the complaint was not truthful and honest. He suggested that there was something behind this, some other motivation other than this patient's concern, and I think that's fair to establish that she has no civil litigation and does not intend to have any.").

[56] *See* Ex. E at 126 (entirety of Dr. Hunter's cross-examination of A.B.).

[57] *See* Ex. E at 3 and 8 (Dr. Hunter represented by Nelson D. Taylor, Esq.).

impartiality. One provision forbids *ex parte* communications about the case between the decision makers and "any party or his representative, or with any officer, employee, or agent engaged in the performance of investigative, prosecuting, or advocating functions ...." La. R.S. 49:960(A). Another provision requires recusal of any decision maker who "cannot accord a fair and impartial hearing or consideration," and gives parties the right to move for disqualification of any decision maker who cannot be fair and impartial. La. R.S. 49:960(B).

Dr. Hunter declined to move for disqualification of any Board member on grounds of partiality, most likely because there was and is no evidence to support such a motion. In this Court, Dr. Hunter has not alleged any partiality on the Board's part, and there is no evidence to overcome the presumption of impartiality under *Withrow*.

**(5) Decision based on legal rules and evidence.** Both the Louisiana Administrative Procedure Act and the Board's procedural rules require any findings of fact to "be based exclusively on the evidence and on matters officially noticed." La. R.S. 49:955(G); La. Admin. Code 46:XLV.9921(F). The Board's Decision and Order of August 18, 2014 demonstrates compliance with this requirement.[58]

**(6) Statement of reasons for the decision.** Both the Administrative Procedure Act and the Board's procedural rules require any decision against a respondent physician to be in writing and to include findings of fact and conclusions of law. La. R.S. 49:958; La. Admin. Code 46:XLV.9927(A). Again, the Board's Decision and Order demonstrates compliance with this requirement.[59]

---

[58] *See* Ex. F.

[59] *Id.*

### B. *Post-deprivation remedies available to Dr. Hunter gave him additional due-process protection.*

Supreme Court jurisprudence teaches that, in a § 1983 case alleging violation of procedural due process, the Court must consider the post-deprivation remedies provided by state law. *See Zinermon v. Burch*, 494 U.S. at 126 (inquiry includes "any remedies for erroneous deprivations provided by statute or tort law"); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.").

Here, Louisiana law provided Dr. Hunter with post-deprivation remedies. He had the right to apply to the Board for rehearing on various grounds. La. R.S. 49:959; La. Admin. Code 49:XLV.9929. And whether or not he applied for rehearing, he had the right to petition the Civil District Court for judicial review of the Board's decision. *See* La. R.S. 49:964(A)(1). Had he done so, the court would have been authorized to reverse or modify the Board's order if it found the order to be:

1. in violation of constitutional or statutory provisions;

2. in excess of the Board's statutory authority;

3. made upon unlawful procedure;

4. affected by other error of law;

5. arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

6. not supported and sustainable by a preponderance of evidence as determined by the reviewing court.

*See* La. R.S. 49:964(G).

If Dr. Hunter had applied for judicial review but was not satisfied with the result, he would have had the right to appeal the Civil District Court's judgment to the Louisiana Fourth Circuit Court of Appeal. La. R.S. 49:965.

In short, there is no deficiency in either the pre-deprivation process (which Dr. Hunter participated in) or the post-deprivation process (which he failed to pursue). He may disagree with the resulting decision, but his disagreement with the result does not establish a violation of procedural due process.

## Conclusion

Dr. Hunter argues that the Board undertook no investigation of the truth of A.B.'s complaint before ordering him to undergo an examination. In making this argument, he disregards the fact that the examination itself was a key part of the investigation. "When we get a complaint on a sexual misconduct or a … possible boundary violation," Ms. Rye testified, "it's not for the compliance officer to determine whether that information is accurate or not. The best way for us to determine if this licensee is safe to practice … is for them to get an evaluation and let the experts in sexual misconduct make that determination."[60] By failing to undergo the examination, Dr. Hunter hindered the investigation into A.B.'s allegations. That is why his license was suspended and remains suspended until he obeys the Board's order to undergo the examination.

But this Court is not called upon to review the merits of the Board's judgment. Rather, in a case involving alleged deprivation of procedural due process, this Court's role is to evaluate the procedures applied to Dr. Hunter's case for compliance with procedural due process. As shown above, the procedures met the due-process standards

---

[60] Ex. E at 38.

23

established by the Supreme Court in *Goldberg v. Kelly*. Dr. Hunter may disagree with the Board's judgment, but he has no claim for violation of procedural due process. For these reasons, the defendants pray that the Court grant summary judgment dismissing Dr. Hunter's complaint with prejudice at his cost.

Respectfully submitted:

*s/ Raymond P. Ward*

_____

Ralph H. Wall, Trial Attorney
La. Bar No. 22667
(504) 585-0439
ralph.wall@arlaw.com

Raymond P. Ward
La. Bar No. 20404
(504) 585-0339
ray.ward@arlaw.com

**Adams and Reese LLP**
701 Poydras Street, Suite 4500
New Orleans, LA  70139
(504) 581-3234 (main)
(504) 566-0210 (fax)

Jeff Landry,
Attorney General

by:
Lance S. Guest
Assistant Attorney General
La. Bar No. 25403
guestl@ag.state.la.us

**Louisiana Department of Justice**
Litigation Division
400 Poydras Street, Suite 1600
New Orleans, LA  70130
(504) 599-1200
(504) 599-1212 fax

*Attorneys for defendants*

## Certificate of Service

This paper has been electronically filed using the Court's CM/ECF system, which will send a notice of electronic filing to the following persons:

> Nelson Dan Taylor
> > jklegal777@aol.com
> > ghray@aol.com
> > *Counsel for plaintiff, Gregg Spaulding Hunter, M.D.*

New Orleans, Louisiana, November 11, 2016.

*s/ Raymond P. Ward*
_____

Raymond P. Ward
La. Bar No. 20404
Adams and Reese LLP
701 Poydras Street, Suite 4500
New Orleans, LA  70139
(504) 585-0339 direct
(504) 581-3234 main
(504) 566-0210 fax
ray.ward@arlaw.com

*Attorneys for defendants*